Mr. Justice Humphreys
delivered the opinion of the court:
In the case now before us, the defendants seek to defeat the claim of dower on account of the devise to the executor, his heirs, executors, administrators, and assigns.
Is there a purpose expressed for which this estate is handed over to the executor, and is that purpose so clear that the extent of the estate which the executor takes is controlled?
Could the testatrix, by the use of words in connection with words conveying an absolute estate, so use them as to control the absolute estate and reduce it below a pure fee or a fee-simple ?
Not only may the language of the devise increase, but it may lessen the estate. The devise is to the executor, his heirs, executors, administrators, and assigns, in trust, to manage and dispose the same in- his discretion for the husbanding and increase thereof while the two grandsons, John Haw and Jesse B. Haw, are under the age of twenty-one years, and to apply the income equally, &c., during their minority, for their support and education; one-half of the estate and property bequeathed in trust to be turned over and accounted for to the elder coming of age, and the other half to be turned over and accounted for to the younger coming of age; and if either should die before coming of age, leaving no child, his share should be accounted for by the executor to the survivor. Does this language create a trust ? If it creates a trust, is it a naked, dry trust, conveying no estate to the executor, but a trust estate, to be managed for the sole use and benefit or the two boys, or the survivor, during minority, and then .to be delivered to them or to the survivor ? It is not denied that the executor held in trust. What estate then did he take The legal estate was vested in him, but for a particular pur *193 pose; that purpose was to hold the property till events should happen which must happen in a given time. There was no contingency to defeat the arrival of the time that was to determine the tenure by which the executor held the land. It was certain to arrive, and when it did arrive, the power of the executor to hold any longer was at an end. When the time did arrive at which the right of control over the estate by the executor ceased, he, in fact, did not undertake to prevent the devisee in interest from entering on the land and enjoying the possession, taking the profits, and managing for himself.
At the appointed time the husband became seized in deed and in fact, and this seizure was legal, it was lawful, and it was out of the lawful power of the executor to prevent or defeat the entry. Either a court of law or a court of equity would have forced him to yield the possession to the owner. There are no words of the devise to indicate any higher property in the executor than most executors have who are appointed by testators for the purpose of managing an estate, real and personal, till the devisees severally arrive at the proper age. The law vests in executors, as a usual thing, the right to hold, at law, an estate, when the object is that the estate shall be kept .together for a specified time, and during this period no one, not even the heir or ultimate devisee, can oust the executor, the trustee; and in this way, and for the purpose of preserving the estate from waste and making it profitable, he is invested with the title, which is recognized as legal. But no deeds are required to be executed by the executor, unless theoriginal powertotheexecutor so prescribes. In making provision for settlements by the grantor in a deed or by a testator this might sometimes be highly proper. But where the language of a deed or will indicates nothing beyond a naked trust, for the sole purpose of preserving the property during the minority, there is no reason for requiring the formality of a deed from a trustee, who can convey no property except by virtue of the instrument, which itself goes to the beneficiary. Possession by the surrender of the trustee is a seizin of the beneficiary, and that which was his in equity has by the surrender and actual possession become his in law. Equity would have forced *194 the trustee to surrender the possession j but if he has voluntarily done that which he could have been forced to do the law is satisfied, without calling in the aid of equity. The equitable and legal title now commingle and center in the same person, and even that ancient requirement of the law, livery of seizin, has been complied with. The record-evidence of title is the will, and the lawful owner is in possession. If this be correct, then seizin in deed, in fact,- and seizin in law have been perfected.
Upon the death of John, the elder, Jesse B., the younger, became entitled to the whole estate, by the express provisions of the will. And on the arrival at the age of twenty-one of Jesse B., the will required the executor to account to him for the share of John, and by the language and express terms of the will the share of John was to go to and be invested in Jesse B., the survivor. In fact, the executor did turn over the dwelling-house and farm to, and the same was occupied and cultivated by, Jesse B. Haw. Here, then, at the time Jesse B. was put into possession by the executor, he was put into possession of the whole, and there was no allotment or division of the estate to be made by the executor, and there could be no demand by the strictest rule of law of a separate deed by the executor to the administrator or heirs of John, to be by them conveyed to Jesse B., for the will itself had provided for the death of either.
The case of Moo parte Gadsden, trustee, 3 Bichardson, relied upon by the learned counsel for defendants, was the construction of the powers of a trustee in a deed to make a good title to a lot of land in Charleston. Miss Oappedeville had contracted to buy the lot, provided the trustee was empowered to sell and make her a good title. The question was whether the legal title remained in Gadsden, as trustee, or whether it was executed in the cestui que trust. The petition was for the substitution of a trustee. The deed conveyed the lot of land to the trustee, in trust, “to raise annually thereout and therefrom the sum of eight hundred dollars,” &c., and after the death of grantor to suffer Elizabeth Pepin, her present and future issue by her husband, to hold and enjoy the said premises, &c., or “in trust to sell the same,” &c., “to .have and to hold the said lot of land to the trustee, his heirs and *195 assigns, forever, upon the trusts,” &c. The donor, Collas, and Pepin, husband of Mrs. Pepin, died since the making of the deed, but Mrs. Pepin and several children were living.
The chancellor determined that the legal estate was still in the trustee, and that he was the proper person to make title, and that his deed of conveyance to the lot would be good and convey a sufficient title, and the court of appeals confirmed the decree.
We see no reason to disagree with the decree in that case. The trust in that case was a continuing one. The deed contemplated that the trust should continue, and the court determined that the fee was executed in the trustee, and remained in him for the purposes of the trust.
In the case before us the devise is to the executor, his heirs, assigns, &o., for a. term of years, for a specific purpose, with a direct devise of the legal estate to the two sons or to the survivor.
No doubt can rest upon the mind after an examination of the two cases, the one before us and the case of Ex parte Gadsden, that the intention of the donor was that the whole legal estate should remain in the trustee for the benefit of wife and children during her life, at least, and that the intention of the devisor was that when the youngest son should arrive at twenty-one years of age the control of the executor should cease, and the legal estate should vest in the son. The events happened as provided for, and the executor carried out the intention of the testatrix, and surrendered the estate to the legal owner; and the law, we think, recognizes the same, and the court of equity will give effect to the claim as existing both in law and equity.
The cases cited by the court in Ex parte Gadsden, each and all, maintain the doctrine that where apt words are used in the instrument the courts will construe the power so that it will be enlarged or circumscribed as will carry out the evident intentions of the grantor or devisor. And this rule is nothing but a rule consonant with our ideas of common justice.
The object of conveying a legal estate, which means nothing but the power of control according to law to trustees, may be for a longer or shorter period. In order to convey any *196 legal estate at all, words must be used suitable for that purpose, and such words as are recognized by tbe law. But tbe law recognizes the power of a grantor to limit the estate.
A trust estate is a trust estate, and if a trust estate you can make no other estate out of it. If it be an estate in trust, it may be for a term of years, or for life, or for lives. It may be an estate dependent on an estate certain. Whatever is the character of the trust, it is nevertheless a trust. And when the objects of the trust are accomplished, the trustee’s care ceases, and the estate which goes over and beyond the trust goes as a necessary completion of the objects of the grantor, whether devisor or donor.
We have only cited the case relied upon by defendant’s counsel, for the reason that that case reviews most of the English decisions bearing directly upon the points involved. And for the same reason we shall cite but one authority relied upon by the learned counsel for plaintiff, Poor vs. Considine, 6 Wallace, 458.
The learned judge who delivered the opinion of the court uses the following language, which we think is expressly applicable to the case before us:
“ When a trust has been created, it is to be held large enough to enable the trustee to accomplish the objects of its creation. If a fee-simple estate be necessary, it will be held to exist, though no words of limitation be found in the instrument by which the title was passed to the trustee and the estate created. On the other hand, it is equally well-settled that, where no intention to the contrary appears, the language used in creating the estate will be limited and restrained to the purposes of its creation. And when they are satisfied, the estate of the trustee ceases to exist, and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation. ”
The leading authorities on the construction of the extent of the estate which a trustee will take under grants similar to the one before us will be found cited in the opinion in the case of Poor and Considine, and we think they fully sustain the claim of complainant to a decree.